## HARPER *vs.* PARKER.

1. When proof of a credit to which the losing party is entitled, has been rejected by the court, a new trial will be awarded, unless the judgment is abated by the amount of said credit.
2. When the point at issue between the parties, is whether a certain transaction was an absolute or conditional sale, and the court charges in both aspects of the case, and there is evidence to justify the charge, the verdict will not be disturbed.

In Equity, from Newton county. Tried before Judge CABANISS, at September Term, 1858.

This was a bill of equity for account, by David M. Parker against Edward Harper.

The bill, in substance, states that in 1848, complainant and defendant entered into articles of agreement for a partnership between them in the purchase of a mill site, the erection of a saw and grist mill thereon, and carrying on a milling business, the proceeds of which were to be equally divided between them. That in pursuance of this agreement, Harper purchased a lot of land for $550, and took a bond for titles to himself, and complainant afterwards gave to him his note for two hundred and seventy-five dollars, his interest in said premises; defendant executed to complainant his bond for titles to one-half thereof upon the payment of said note. The bill further states that complainant afterwards paid to defendant one hundred and twenty-five dollars in part payment of said purchase money—that they proceed to the erection of the mills, and the saw mill went into operation in January, 1850, and the grist mill in April or May thereafter, and continued in operation until March, 1853, doing a successful business, and yielding large profits—that

17

defendant kept said mills and the books of account, and collected and appropriated the proceeds and profits thereof. That complainant transferred to W. W. Clark, Esq., an attorney at law, the bond for titles to one-half said mills, executed by defendant as aforesaid, as collateral security for the payment of a debt in his hands for collection against complainant, amounting to about six hundred dollars—that complainant paid two hundred dollars on said debt, and then, by agreement between all the parties, said bond for titles was transferred to defendant, upon his giving his note, payable in lumber for the balance due on said debt, being about four hundred dollars; and that said note was paid by lumber belonging equally to complainant and defendant, and this arrangement was made for the benefit of complainant, and for the further purpose of securing defendant as security for complainant on a note for $850 00, held by Green B. Turner, which last note to Turner was also secured by a mortgage on other property of complainant's, and that said debt was paid off in full by complainant, and defendant discharged and released therefrom. The bill further states, that in addition to the one hundred and twenty-five dollars paid in part of said purchase,, and two negroes which he furnished about the business of the mills, he paid out large sums, amounting to one thousand dollars, in and about and for the machinery and business of the same. That defendant, after running said mills for about two years, sold and conveyed them to B. N. McNight, (from whom the premises were originally purchased,) for twenty-five hundred dollars, all of which he appropriated to his own use.

The answer of defendant admits the partnership as stated in the bill, but avers that he owned said premises at the time the partnership was formed, and sold one-half thereof to complainant and gave him bond for titles as stated, but that the amount to be paid by complainant for said half was $257 00, and not $275 00.

Harper vs. Parker.

Defendant denies the charges and allegations in the bill as to the transaction with Clark, but states that said bond for titles was given up to defendant by Clark, upon defendant's paying or agreeing to pay the claim in Clark's hands, and which was done by a note given to Clark, payable in lumber.   That by this operation and so understood and assented to at the time by complainant, defendant became the sole and absolute owner of the mills, and he destroyed his said bond for titles, as he had a right to do—denies that he has received any money unaccounted for and not paid out for and on account of said partnership while it lasted—denies that there was any agreement or arrangement that his bond for titles was transferred to him, as an indemnity to his being security on Turner's note; and insists that upon a full and fair settlement complainant is indebted to him several hundred dollars. Admits that he sold the place to McNight for $2500, as his own and as he had a right to do, and denies that complainant had any right, interest or claim in and to said mills or their proceeds after January, 1852.

Upon the proof and charge of the court, the jury found for the complainant four hundred and fifty dollars.

Whereupon defendant moved for a new trial on the following grounds:

1. Because the court erred in rejecting three promissory notes tendered in evidence, made by complainant and payable to defendant, one of fifty dollars, due 25th Dec., 1850; and the other two for fifty-three dollars and fifty cents each; one due 25th December, 1851, the other 25th December, 1852; both dated 10th November, 1848, which were offered to show the indebtedness of complainant to defendant.

2. Because the court erred in charging the jury, that if they believed that there was an agreement, that complainant should transfer his interest in the land and mills to defendant as collateral security, and in consideration

that defendant should pay certain debts due by complainant, and that defendant had paid those debts, then complainant was not entitled to recover any portion of the profits of said mills after said transfer, nor was he entitled to any part of the money received by defendant from the sale thereof. But if defendant had failed to pay the debts which he had assumed to pay, but had only paid a part thereof, then complainant's interest in the mills was not arrested, and he was entitled to recover his share of the profits up to the time of the sale by defendant, and one half the purchase money, and defendant was entitled to a credit for whatever sums he had paid for complainant under their agreement.

3. Because the verdict was contrary to the evidence and the weight of evidence.

The court overruled the motion for a new trial and defendant excepted.

EZZARD & COLLIER, for plaintiff in error.

FLOYD, and HARPER, *contra.*

*By the Court.*—LUMPKIN, J., delivering the opinion.

There are but two questions in this case: 1st, did the court err in rejecting the notes offered by the defendant? 2dly, was the charge of the court correct, and authorized by the evidence?

1. We think the court was wrong in refusing to allow the notes to go in evidence. The complainant in his bill alleges that he was to pay the defendant $275 for his half of the lot of land, upon which the mill was erected; and that he had paid $125. The defendant in his answer states that he was to pay $257; and that he had paid $75. Taking either statement, and the balance due for the land was something like the amount of the three notes held

Harper vs. Parker.

on Parker by Harper. There was enough in the proof to warrant the jury in finding that these notes grew out of the transaction, for the settlement of which the bill was filed, and we shall order a new trial in this case, unless Parker will write the amount of these notes off of the judgment.

2. We do not understand the plaintiff in error as objecting to the charge in the abstract. He contends there was no evidence to justify it. The main point in controversy between these parties, is whether, when Harper's bond was transferred to him by Clarke it was on absolute purchase of Parker's interest, or only a conditional sale, provided Harper had the debts of Turner to pay, amounting to eight hundred dollars; and upon which he was security for Parker. He did not have this debt to pay, but only paid the Roberts debt for Parker, amounting to a little more than $400.

We think there is evidence to sustain either hypothesis; and we must say, the testimony was abundant to show that the sale was conditional, if a sale at all; and the court was warranted in charging as it did. And it is easy to demonstrate, that the finding of the jury approximated to something like accuracy, provided they adopted the theory, that the sale was not absolute.

It would be useless, therefore, to re-try this case, provided the credit of the notes is allowed. If the pleadings are faulty they could be amended. Why should these notes, if they are *bona fide* due, not be suffered to come in whether growing out of this transaction or not? This bill is for an account, and Parker owes Harper these notes. Why should they be excluded.